IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

ROLLS-ROYCE PLC, )
)
    Plaintiff, )
)
v. ) 1:10cv457 (LMB/JFA)
)
UNITED TECHNOLOGIES )
CORPORATION (d/b/a PRATT & )
WHITNEY), )
)
    Defendant. )

## MEMORANDUM OPINION

Before the Court is plaintiff Rolls-Royce plc's Motion to Dismiss and Strike United Technologies Corporation's Affirmative Defenses and Counterclaims of Inequitable Conduct, Estoppel, Laches, and Unclean Hands [Dkt. No. 195]. Specifically, Rolls-Royce moves to dismiss defendant United Technologies Corporation's ("UTC") third counterclaim and to strike the third affirmative defense, each of which alleges inequitable conduct. For the reasons discussed below, the motion will be denied.[1]

I. Background

Rolls-Royce and UTC manufacture jet engines. On November 17, 1995, UTC filed U.S. patent application no. 08/559,965 ("'965 application") for a jet engine swept fan blade. The '965 application issued as Patent No. 5,642,985 ("'985 Patent") on July 1, 1997. On April 9, 1996, Rolls-Royce filed a patent application for a jet engine fan blade in Great Britain, and on

---

[1] On January 14, 2011, the motion was granted in part as to UTC's affirmative defenses of laches, estoppel, and unclean hands.

March 18, 1997, filed a similar application in the United States, Application No. 08/819,269 ("'269 application"). First Am. Answer ¶ 69-71. On November 17, 1997, the PTO rejected the '269 application as being anticipated by UTC's '985 Patent. Id. ¶ 73-74. On March 18, 1998, Rolls-Royce responded to the examiner by canceling all of its claims, and proposed five new claims. Id. ¶ 75. On April 9, 1998, the examiner rejected these claims as being anticipated by the '985 Patent. Id. ¶ 77. Rolls Royce abandoned the '269 application. Id. ¶ 78. On October 9, 1998, Rolls-Royce filed continuation-in-part application no. 09/168,968 ("'968 application"). Id. ¶ 79. On August 18, 1999, the examiner rejected all of Rolls-Royce's claims as either obvious or anticipated by UTC's '985 Patent. Rolls-Royce responded to the rejection by arguing that its application contained two features not disclosed in UTC's '985 Patent: a "fan casing having an inner duct wall which in the region of a fan rotor is convergent in the downstream direction," and "swept fan blades having a tip profile which in revolution conforms to the convergent duct wall." First Am. Answer ¶ 100. In response to that representation, the PTO approved the application and issued U.S. Patent No. 6,0071,077 ("'077 Patent") on June 6, 2000. The '077 Patent covers:

> A swept fan blade design for the low pressure compressor rotor or fan rotor stage of a ducted fan gas turbine engine has a leading edge swept forward near the hub up to a first radial height, then rearward up to second radial height and finally is swept again up to the blade tip. The aerodynamic effect is to produce a mid-height bias to the airflow enabling the tip region to be given increased twist and to possess

2

> increased resistance to foreign object damage. The design also provides a rear radial blade stacking axis to help reduce internal stresses due to centrifugal forces.

'077 Patent, Ex. A to First Am. Compl.

On June 5, 2001, UTC filed a second reissue application, no. 09/874,931 ("'931 Reissue Application") based on the '985 Patent. In 2003, UTC convinced the Patent and Trademark Office's Board of Patent Appeals and Interferences to declare an interference between the '077 Patent and UTC's '931 Reissue Application. The purpose of an interference is to determine which of multiple parties, each asserting patent rights to the same claimed invention, was the first to actually invent it. Rolls-Royce appealed the interference to this Court in 2005, and the Court reversed the PTO's decision. Rolls-Royce PLC v. United Techs. Corp., 730 F. Supp. 2d 489 (E.D. Va. 2009). The Federal Circuit affirmed this Court on May 5, 2010. Rolls-Royce PLC v. United Techs. Corp., 603 F.3d 1325 (Fed. Cir. 2010).

On May 5, 2010, Rolls-Royce filed this civil action for patent infringement, alleging that UTC's Geared Turbofan engines and other products infringe the '077 Patent. First Am. Compl. ¶¶ 20-24. Rolls Royce asks the Court to declare that UTC has infringed the '077 Patent, enjoin UTC's infringement, and award damages pursuant to 35 U.S.C. § 284.

On December 6, 2010, UTC filed its First Amended Answer, asserting six affirmative defenses, the third of which alleges

that the '077 patent is unenforceable due to inequitable conduct. UTC also filed eight counterclaims, of which the third seeks a declaratory judgment that the '077 is unenforceable due to inequitable conduct. Rolls-Royce moves to dismiss the third counterclaim and to strike the third affirmative defense.

## II. Discussion

To establish inequitable conduct, a party must demonstrate by clear and convincing evidence that the applicant "(1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) did so with intent to deceive the PTO." Cancer Research Tech. Ltd. v. Barr Labs., Inc., 2010 U.S. App. LEXIS 23214, at *21 (Fed. Cir. Nov. 9, 2010). The Federal Circuit has repeatedly indicated that inequitable conduct defenses are disfavored. See, e.g., Burlington Indus. Inc. v. Dayco Corp., 849 F.2d 1418, 1422 (Fed. Cir. 1998) (declaring that "the habit of charging inequitable conduct in almost every major patent case has become an absolute plague.").

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), an inequitable conduct counterclaim or affirmative defense must satisfy Fed. R. Civ. P. 9(b)'s particularity standard and identify "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." Exergen Corp. v. Wal-Mart Stores, Inc., 575 F.3d 1312, 1326 (Fed. Cir. 2009). As to intent, Rule 9(b)

requires that the defendant "allege sufficient underlying facts from which a court may reasonably infer that a party acted with the requisite state of mind," which in this case is the intent to deceive the PTO. Id. at 1327. An inference of deceptive intent "must be reasonable and drawn from a pleading's allegations of the underlying facts to satisfy Rule 9(b) . . . ." Id. at 1329, n.5. The Court must accept all of a complaint's well-pleaded allegations and view them in a light most favorable to the plaintiff. Battlefield Builders, Inc. v. Swango, 743 F.2d 1060, 1062 (4th Cir. 1984).

UTC's four theories of inequitable conduct allege that: 1) the Rolls-Royce employee-inventor of the '077 Patent, Anthony Rowlands ("Rowlands"), filed a false inventor declaration; 2) Rolls-Royce misled the PTO about the patent application's priority date; 3) Rolls-Royce failed to inform the PTO about material prior art; and 4) Rolls-Royce mischaracterized UTC's '985 Patent during prosecution of the '077 Patent.

A. Inventor declaration

UTC alleges that Rolls-Royce engaged in inequitable conduct by submitting a declaration in which Rowlands falsely stated that he had reviewed and understood the '968 application. First Am. Answer ¶¶ 85-91. In a declaration filed with the '968 application, Rowlands attested:

> I hereby state that I have reviewed and understand the contents of this application, including the claims as amended by any amendment referred to above; and that I acknowledge my duty to disclose to the Office all

>      information known to me to be material to patentability
>      as defined in Title 37, Code of Federal Regulations, §
>      1.56.

Id. ¶ 89.

UTC supports its argument that this declaration was false by citing to Rowlands's September 15, 2005 deposition testimony in which he stated that he had not seen Figure 4 in the '077 Patent:

>      Q: But you didn't have an involvement in Figure 4?  I
>      notice you left it out.
>
>      A: It was brought to my attention this week that that
>      was added, and I wasn't involved in it, no.  If you
>      asked me last week, I wouldn't have known.

First Am. Answer ¶ 87.  UTC also claims that Rowlands was not aware of material changes to the '968 application, citing the following testimony from Rowlands's deposition:

>      Q: In the first part of the writing, the description
>      that's in Column 1 to the very top of Column 8, is that
>      something that you did the initial draft of?
>
>      A: Yes.
>
>      Q: And then reviewed that draft description with the
>      patent lawyer and made changes as appropriate; correct?
>
>      A: Yes, but I'd like to add that this has been - that
>      would have been my original application.  This is, as I
>      understand it, has been changed subsequently to that.
>
>      Q: Do you know why it was changed?
>
>      A: I wasn't involved in the details of that, no.
>
>      Q: Well, when the change was made in the application,
>      the later application for a patent where you were the
>      inventor, were you involved in that?
>
>      A: In making the changes, I wasn't involved, no, from
>      my recollection.

First Am. Answer ¶ 86.

Rolls-Royce responds that UTC's counterclaim omits the portion of the same deposition in which Rowlands stated that he reviewed the application before signing the declaration:

> Question: But even after the changes were made, you did review the description and the claims to see if they were - if they accurately reflected your invention; correct?
>
> Mr. Rowlands: Yes.
>
> Question: And in terms of the initial application, before it was filed, you reviewed the description and the claims to make sure they accurately reflected your invention; correct?
>
> Mr. Rowlands: Yes.

Mot. to Dismiss at 11.

The first element of an inequitable conduct claim is misrepresentation of a material fact. The deposition testimony cited by UTC suggests that Rowlands did not fully review and understand the revised '968 application, but the testimony cited by Rolls-Royce suggests that Rowlands had reviewed and did understand the application. On this record, the Court cannot determine, as a matter of law, whether Rowlands misrepresented a material fact. Such a determination requires fact-finding, including weighing witness credibility. At the motion to dismiss stage, UTC merely must allege a plausible and specific claim that Rowlands falsely declared that he had fully reviewed and understood the revised application. UTC has done so, by referring to specific deposition statements that present a

7

plausible claim that Rowlands falsely declared that he reviewed and understood the revised application, thereby satisfying the Rule 9(b) pleading requirement of alleging the "who, what, when, where, and how" of the alleged misrepresentation.

As to intent, UTC has also alleged sufficient facts that would lead to a reasonable inference that Rolls-Royce intended to deceive the PTO by filing the declaration. In its Opposition brief, UTC argues that "a reasonable examiner would have wanted to know that the sole inventor had not reviewed and/or understood his own application when it was submitted." Opp. at 19. It is reasonable to infer that the false declaration was made with the intent to deceive the PTO. Accordingly, UTC has satisfied all of the requirements of Rule 9(b), and its inequitable conduct claim will not be dismissed as a matter of law.

B. Priority date

In its second inequitable conduct claim, UTC alleges that Rolls-Royce incorrectly claimed that the '968 application should receive the filing date of the earlier '269 patent application and the British patent application. First Am. Answer ¶¶ 94-97. "As a general rule, the filing date of an application will determine the scope of the prior art that an examiner will consider in evaluating whether an application should be rejected on grounds of anticipation or obviousness." Arrow Int'l, Inc. v. Spire Biomedical, Inc., 635 F. Supp. 2d 46, 61 (D. Mass. 2009). UTC argues that "the '968 application included critical additions

and other changes that were not from the original inventor and were not disclosed in the earlier applications," and that by falsely claiming the priority date of the earlier application, Rolls-Royce avoided disclosure of material prior art that was created between the April 9, 1996 Great Britain priority date and the October 9, 1998 filing of the '968 application. Id. ¶¶ 94-96.

The '968 application is a "continuation-in-part." Such applications receive the filing date of the prior application, as long as the claims were either disclosed or supported by the original application. If a claim in the continuation-in-part application discloses new matter, it does not get the benefit of the original application's filing date. Rolls-Royce argues that although the '968 application contains information that was not in the earlier '269 application, the general subject matter is the same.

The strength of UTC's inequitable conduct argument depends on whether the '968 application added subject matter that was not in the '269 application. As with UTC's allegation about the Rowlands declaration, this is a question of fact that cannot be determined at the motion to dismiss stage.

UTC has satisfied the Rule 9(b) pleading requirements. It has specifically alleged why the priority date was incorrectly reported and what prior art was excluded because of the earlier

priority date. Because exclusion of material prior art could provide a patent applicant with the significant benefit of having the application granted, UTC has also pled sufficient facts upon which a reasonable inference of intent to deceive could be based. Therefore, this inequitable conduct allegation will not be stricken.

C. Failure to inform the PTO about prior art

UTC claims that Rolls-Royce failed to disclose prior art in the '968 application process. First Am. Answer ¶¶ 98-127. On August 18, 1999, the examiner rejected the '968 application as obvious or anticipated by UTC's '985 patent. Id. ¶ 98. Rolls-Royce successfully responded to that rejection by arguing that its '968 application differed from UTC's '985 Patent because the '968 application disclosed convergent fan casings combined with convergent blade tip profiles. Id. ¶ 100. UTC argues that Rolls-Royce did not present the patent examiner with any prior art related to that claim. Citing depositions from the interference action, UTC contends that Rolls-Royce's employees and agents were aware of prior art containing convergent casings with corresponding blade tip profiles, much of which was in dozens of existing Rolls-Royce engines, and that Rolls-Royce's failure to report its own technology as prior art constitutes inequitable conduct. Id. ¶¶ 102, 104.

Moreover, UTC alleges that James Oliff, the lawyer who

prosecuted the '968 application for Rolls-Royce, had prosecuted two other patents for Rolls-Royce: U.S. Patent No. 4,845,939 ("'939 Patent"), a gas turbine engine with bypass diverter means, and U.S. Patent No. 5,737,921 ("'921 Patent"), a gas turbine engine fuel injector. UTC argues that Oliff was aware that the '939 and '921 patents contained technology that should have been disclosed in the '968 application. Id. ¶¶ 106-07. Lastly, UTC claims that Rolls-Royce never disclosed to the PTO that its own Trent 700 engine had a swept fan blade with convergent casing and convergent blade tip profiles. Id. ¶¶ 119-26.

Rolls-Royce responds that the technology cited by UTC is cumulative to prior art that Rolls-Royce did cite to the examiner For example, Rolls-Royce points to the '077 Patent specification, which discloses:

> An angled casing of this kind has long been used by us to avoid complicated aerodynamic interference effects which might otherwise be brought about by reflection of the passage shock waves from the casing wall as has been described in U.S. Pat. No. 5,642,985.

Mot. to Dismiss at 17; Ex. H. In this specification, Rolls-Royce points to prior art for convergent casings from both Rolls-Royce and UTC. UTC counters that the '968 application's statement of "[a]n angled casing of this kind" is not sufficiently specific and that Rolls-Royce distinguished its '968 application from UTC's '985 patent by stating that it had convergent casings combined with corresponding blade tip profiles. Opp. at 9-10,

First Am. Answer ¶ 108.

The strength of this inequitable conduct argument hinges on whether the prior art cited by UTC is cumulative. See Alloc, Inc. v. Pergo, Inc., 366 Fed. Appx. 173, 175 (Fed. Cir. 2010) ("information is not material if it is cumulative of other information already disclosed."). To determine whether prior art was intentionally omitted will require a fuller record. In considering a 12(b)(6) motion, the only inquiry is whether UTC has satisfied Rule 9(b) by pleading the "who, what, when, where, and how" of the material misrepresentation and intent to deceive. It has. UTC has cited specific examples of prior art that Rolls-Royce did not cite, proffered reasons why the prior art is material and not cumulative, and explained how the prior art might have impacted the examiner's review of the '968 application. Therefore, because UTC has met the pleading requirements for both material misrepresentation and intent to deceive, this inequitable conduct claim will not be dismissed or stricken.

D. Misrepresentation of UTC's '985 patent

Lastly, UTC alleges that Rolls-Royce engaged in inequitable conduct by materially misrepresenting UTC's '985 patent during prosecution of the '968 application by stating that "[a]n angled casing of this kind has long been used by us to avoid complicated aerodynamic interference effects which might otherwise be brought

12

about by reflection of the passage shock waves from the casing wall as has been described in [UTC's '985 Patent]." Opp. at 24; First Am. Answer at ¶¶ 92-93. In a November 17, 2005 brief in the interference trial, Rolls-Royce admitted that:

> While the '077 Patent inaccurately characterizes the endwall shock described in the 985 Patent, it specifically notes that endwall shock is not an issue with a convergent inner duct wall/fan blade tip profile as disclosed and claimed in the '077 Patent, as discussed above with respect to the Breugelmas Declaration.

Mot. to Dismiss at 13; Ex. E at 59.

Rolls-Royce has conceded that it mischaracterized UTC's '985 Patent, but contends that the mischaracterization is immaterial and not grounds for an inequitable conduct counterclaim or defense. In response, UTC argues that the mischaracterization is material because the statement was not in Rolls-Royce's original application, which was rejected on the basis of UTC's '985 Patent. After adding that its invention solved the '985 Patent's problem with reflection of passage shock waves coming from the casing wall, the examiner granted the application. To determine whether this error was material and made with intent to deceive will require actual evidence, not just argument. UTC has satisfied the Rule 9(b) pleading standards by identifying the alleged misrepresentation and why the misrepresentation was material, and has pled sufficient facts to support a reasonable inference of intent to deceive by alleging that the statement

distinguished Rolls-Royce's application from UTC's '985 patent, which had been grounds for an earlier rejection. Therefore, this inequitable conduct claim will neither be dismissed nor stricken at this stage.

IV. Conclusion

For the reasons discussed above, Rolls-Royce's Motion to Strike UTC's Third Affirmative Defense and Dismiss UTC's Third Counterclaim will be denied in an Order to be issued separately.

Entered this 2nd day of March, 2011.

Alexandria, Virginia

/s/ *signature*
Leonie M. Brinkema
United States District Judge